1  GREGORY G. KATSAS
   Acting Assistant Attorney General
2  JOSEPH P. RUSSONIELLO
   United States Attorney
3  R. MICHAEL UNDERHILL
   Attorney in Charge, West Coast Office
4  Torts Branch, Civil Division
   R. SCOTT BLAZE
5  Senior Admiralty Counsel
   Torts Branch, Civil Division
6  CHAD KAUFFMAN
   Trial Attorney
7  Torts Branch, Civil Division
   U.S. Department of Justice
8  7-5395 Federal Bldg., P.O. Box 36028
   450 Golden Gate Avenue
9  San Francisco, California 94102-3463
   Telephone: (415) 436-6635; (415) 436-6646
10 E-mail: Chad.kauffman@usdoj.gov

11 Attorneys for Defendant
   United States of America

12

### UNITED STATES DISTRICT COURT

13

### NORTHERN DISTRICT OF CALIFORNIA

14

| | | |
|---|---|---|
| JACKIE V. LOTT, | ) | Civil No. C-07-3530-PJH-EMC |
| Plaintiff, | ) | In Admiralty |
| v. | ) | OBJECTION AND RESPONSE OF THE UNITED STATES TO PLAINTIFF'S "ADMINISTRATIVE MOTION" |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |
| | ) | Hearing Date: July 23, 2008 |

15

16

17

18

19

20

### PRELIMINARY STATEMENT

21     On July 14th, plaintiff filed what he improperly styled an "administrative motion" in

22  order to avoid regular briefing of a matter which could potentially involve the Court in a

23  violation of foreign law, as well as potentially subject a United States citizen to legal sanction

24  in a foreign country. The "administrative motion" also fails to advise the Court that the

25  United States has reason to believe that plaintiff's counsel has committed an egregious

26  ethical breach by violating the attorney-client relationship of the Government. As explained

27  below, the United States has asked plaintiff's counsel specific information in order to

28

1   determine the extent of the ethical violations. In order to evaluate the full extent of the
2   breach, it is necessary that plaintiff provide – forthwith – *complete, unedited* copies of the
3   tape recording we know about, as well as all other *ultra vires* contacts, statements,
4   recordings, *etc.*, of which we presently are unaware and which plaintiff has attempted to hide
5   from disclosure to the United Stats and the Court.

6                              **DISCUSSION**

7           Plaintiff filed his "administrative motion" seeking to take the telephone deposition of
8   a witness in Mongolia, as well as the short-noticed deposition of a witness in Maine. Both
9   persons are former employees of the United States and both fall within the scope of the
10  attorney client privilege afforded the United States – *said privilege belonging to the United*
11  *States, not the witnesses. See, e.g., Martin v. Miller*, 65 F.3d 434, 440, 1995 A.M.C. 2972
12  (5th Cir. 1995), discussed below (employees of the United States' ship manager/agent on
13  Maritime Administration vessels like CAPE JACOB are employees of the United States);
14  *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1493 and fn. 6 (9th
15  Cir. 1989) (attorney client relationship applies to former employees, not merely current
16  employees, and also applies to subsidiaries, not merely parent company); *In re Coordinated*
17  *Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 658 F.2d 1355 (9th Cir.
18  1981), *cert. denied,*455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982) (attorney client
19  relationship applies to former employees; breach of Canon 9 of the Professional Rules of
20  Responsibility itself may provide basis of disqualification of counsel); *In re Richard Roe,*
21  *Inc.*, 168 F.3d 69, 72 (2d Cir. 1999) (privilege belongs to the employer, not the employee or
22  former employee).

23          The United States has discovered that plaintiff's counsel initiated *ex parte* contact
24  with *both* witnesses (and possibly others) and, indeed, we are aware of a tape recorded
25  conversation between plaintiff's counsel and at least one of the witnesses. We have asked,
26  to no avail, for production of all such *ultra vires* communications, as well as all information
27  concerning all statements, recordings, and notes which would provide further evidence of

28

1  plaintiff's breach.  In order to hide the extent of the ethical breaches, plaintiff has refused to

2  provide the communications with the witnesses.

3        As we discuss below, the United States is attempting to investigate the extent of the

4  breach of privilege.  Until the investigation is concluded, we shall not propose a specific

5  remedy or sanction.  This memorandum focuses on the present reasons that plaintiff's

6  proposed "telephone" depositions not take place with respect to the two employees with

7  whom plaintiff's counsel communicated in violation of fundamental ethical requirements.

8  **I.    THE ATTORNEY CLIENT RELATIONSHIP AND ITS APPLICATION TO CREWMEN ABOARD MARITIME ADMINISTRATION SHIPS AND**

9  **APPLICATION OF THE RELATIONSHIP TO FORMER EMPLOYEES**

10       The CAPE JACOB is owned by the United States Maritime Administration

11 ("MARAD") and at all relevant times was operated by its ship manager and agent, Matson,

12 pursuant to an agency contract.  Under these circumstances, not only are both Matson and

13 the crew of the vessel agents of the United States, but the crew are considered employees of

14 the Government. *See, e.g., Martin v. Miller,, supra,* 65 F.3d at 440 (private ship operator and

15 private merchant seaman/crewman of a United States vessel owned by the Maritime

16 Administration, but operated by private ship operator, were agents of the United States and

17 seaman was an employee of the United States); *cf., Admiral Ins. Co. v. U.S. Dist. Court for*

18 *Dist. of Arizona, supra,* 881 F.2d at 1493, fn. 6 (attorney client relationship applies to

19 subsidiaries, not merely parent company).

20       The case law is uniform with respect to the ship manager's agency status. *See, e.g.,*

21 *Martin v. Miller, id.,* and *Dearborn v. Mar Ship,* 113 F.3d 995, 998 fn.3 (9th Cir. 1997),

22 wherein the Ninth Circuit broadly defined the term "agent" as it is used in the Suits in

23 Admiralty Act with respect to the United States' ship managers and operators:

24        In this respect, 'agent' may apply more broadly in this context than it does elsewhere, and may include in some cases entities properly defined as

25 'independent contractors.' [Quoting *Petition of the United States re USNS MISSION SAN FRANCISCO,* 367 F.2d 505 (3d Cir. 1966), *cert. denied,* 386

26

27

28

1    U.S. 932, *reh'g. denied*, 386 U.S. 1000 (1967).] ...[1]/

2        It is also beyond cavil that former and not merely current employees fall within the

3    scope of privilege. *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona, supra*, 881 F.2d

4    at 1493; *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,*

5    *supra*, 658 F.2d 1355. Since it provides an excellent summary of the issue and case law, we

6    quote at length the Fourth Circuit's decision in *In re Allen*, 106 F.3d 582, 605-06 (4th Cir.

7    1997), including its citations to the Ninth Circuit:

8        ... The Supreme Court in *Upjohn* left open the question of whether the scope
     of the attorney-client privilege extends to include communications with
9        former, as well as current, employees. 449 U.S. at 394 n. 3, 101 S.Ct. at 684
     n. 3. However, in a concurring opinion, Chief Justice Burger indicated his
10       belief that the privilege should apply to communications by former employees:
     'in my view the Court should make clear now that, as a general rule, a
11       communication is privileged at least when, as here, an employee or former
     employee speaks at the direction of the management with an attorney regarding
12       conduct or proposed conduct within the scope of employment.' *Id.* at 402-03,
     101 S.Ct. at 689 (Burger, C.J., concurring).

13

14       Most lower courts have followed the Chief Justice's reasoning and granted the
     privilege to communications between a client's counsel and the client's former
15       employees. *See In re Coordinated Pretrial Proceedings in Petroleum Prod.*
     *Antitrust Litig.*, 658 F.2d 1355, 1361 n. 7 (9th Cir.1981) (The *Upjohn*
16       'rationale applies to the ex employees ... involved in this case. Former
     employees, as well as current employees, may possess the relevant information
17       needed by corporate counsel to advise the client ....'), *cert. denied,* 455 U.S.
     990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982); *Admiral Ins. Co. v. United States*
18       *Dist. Ct. for Dist. of Arizona*, 881 F.2d 1486, 1493 (9th Cir.1989) (relying on

19   _____

20   [1]/    With apologies for the following string cite, we note that the agency status of the ship manager/agent
     was or should have been known to plaintiff had even minimal legal research been undertaken. *See, Doyle v.*
21   *Bethlehem Steel Corp.*, 504 F.2d 911 (5th Cir. 1974); *O'Connell v. Interocean Management*, 90 F.3d 82 (3rd
     Cir. 1996); *Kasprik v. OMI*, 87 F.3d 462 (11th Cir. 1996); *Manuel v. International Marine Carriers*, 50 F.3d
22   1253 (4th Cir. 1994); *Williams v. American Overseas Corp.*, 102 F.Supp.2d 748 (S.D. Tex. 2000); *Cos-*
     *mopolitan Shipping Co. v. American Export Isbrandtsen Lines, Inc.*, 411 F.2d 1185 (2d Cir. 1969); *Hanlon*
23   *v. Waterman Steamship Corporation*, 265 F.2d 206 (2d Cir. 1959); *Carter v. American Export Isbrandtsen*
     *Lines, Inc.*, 411 F.2d 1185 (2d Cir. 1969); *Smith v. United States*, 346 F.2d 449 (4th Cir. 1965), *cert. denied,*
24   382 U.S. 878 (1965); *Santos v. RCA Service Co.*, 603 F. Supp. 943 (E.D. La. 1985); *Martin v. Grace Line,*
     *Inc.*, 322 F. Supp. 395 (E.D. Cal. 1970); *Tarver v. United States*, 785 F.Supp. 607, 612 (S.D. Miss. 1991);
25   *Petition of the United States (USNS POTOMAC)*, 303 F.Supp. 1282 (E.D.N.C. 1969), *aff'd.*, 432 F.2d 1357
     (4th Cir. 1970); *Mounteer v. Marine Transport Lines*, 463 F. Supp. 715 (S.D.N.Y. 1979); *Respicio v.*
26   *Mathiasen's Tanker Industries, Inc.*, 1967 A.M.C. 25 (C.D. Cal. 1966) [not otherwise reported]; *Cruz v.*
     *Marine Transport Lines, Inc.*, 634 F. Supp. 107 (D.N.J. 1986), *aff'd.*, 806 F.2d 252 (3d Cir. 1986), *cert.*
27   *denied*, 481 U.S. 1048 (1987).

28

*Coordinated Pretrial Proceedings* ); *Porter v. Arco Metals Co.,* 642 F.Supp. 1116, 1118 (D.Mont.1986)(*Upjohn* indicates that 'the attorney- client privilege may extend to [defendant's] former employees... [with regard to their communications with] the company's counsel.'); *United States v. King,* 536 F.Supp. 253, 259 (C.D. Cal.1982) ('[The attorney-client] relationship existed even though [the witness] was not an employee of [the client] at the time of the conversation.'), *overruled on other grounds by United States v. Zolin,* 842 F.2d 1135 (9th Cir.1988); ...

Just as in the situations in which a client's former attorney cannot waive her former client's privilege, or a doctor waive her former patient's privilege – since the privilege belongs to the client and patient, not the attorney or the doctor – the privilege belongs to the employer, not the employee. *See, e.g., In re Richard Roe, Inc.*, 168 F.3d at 72 (privilege belongs to the employer).

### A. The "Telephone" Depositions of Witnesses Who Are the Subject of Plaintiff's Ethical Breaches

#### i. The Requirement That Plaintiff Produce All Information and Documents Pertaining to *All* Breaches Before Proceeding Further

Neither the United States nor the Court are required to guess whether plaintiff's counsel breached the attorney client relationship *via* his *ex parte* contacts. Very simply, plaintiff's counsel shockingly has admitted it – under oath, no less. In his declaration, counsel states that he went through the United States' crew list and began calling the Government's crewmen. "I have been in touch with Mr. Scease. He is located in Ulaan Bataar, Mongolia and had been before I could locate him." Declaration of Arnold I. Berschler, line 2. "I learned that Mr. Elliott had been Chief Engineer on the 2005 accident date ... ." Declaration of Arnold I. Berschler, line 18.

In order to evaluate the full extent of the breach, it is necessary that plaintiff provide – forthwith – *complete, unedited* copies of the tape recording we know about, as well as all other *ultra vires* contacts, statements, recordings, *etc.*, of which we presently are unaware. Once all materials have been provided regarding contacts with the United States' employees, the United States then would be in a position to seek an appropriate remedy and, if believed necessary, take other appropriate action. *Cf., In re Coordinated Pretrial Proceedings in*

1    *Petroleum Prod. Antitrust Litig., supra,* 658 F.2d 1355 (Canon 9 of the Code of

2    Responsibility of the American Bar Association, which requires an attorney to avoid even

3    the appearance of impropriety, may be sufficient in and of itself to require disqualification

4    of counsel).

5         We note that limited references to an attorney's history of ethical violations are

6    available on the California State Bar public website, though not all pertinent information is

7    available without complying with further procedures and requests. We shall not say more

8    at this point, except to note that the United States has checked the California State Bar public

9    website and has reason to make further inquiries with that organization.

            **ii.    The Depositions, Including a Proposed Telephone Deposition in**
            **Mongolia**

         Against the background of the foregoing breach of ethical strictures, plaintiff proposes

    to take the telephone deposition of a former employee who presently is in Mongolia.

    Pursuant to Rule 30(b)(4) of the Fed.R.Civ.P., the location of a telephone deposition is

    considered as the location of the deponent, meaning that the deposition itself, merely by

    application of Rule 30, would be conducted in Mongolia despite counsel's presumed

    presence in the United States.

         The deposition of a witness in a foreign country is governed by the law of the country

    in which the deposition would be taken. Rule 28 of the Fed.R.Civ.P. deals with foreign

    depositions. We quote from Wright and Miller, *Federal Practice and Procedure*, Rule 28,

    Volume 8, section 2083, *Depositions in Foreign Countries*, p. 673 (West Publishing Co.

    1994), with respect to issues of foreign law:

         The United States has conventions on the subject with some countries and the
         simple procedure of taking the deposition by notice may be available in many
         instances. Other countries, however, completely prohibit the taking of the
         testimony within their boundaries that will be used in a foreign court. In such
         a situation even amended Rule 28(b) may be of no help. Finally there are a
         large number of countries where the nature of a deposition is misunderstood,
         or where the taking of a deposition by a United States officer, in accordance
         with United States procedure, is thought offensive to notions of sovereignty,
         but the countries are nonetheless willing to assist American litigation if the
         proper procedures are followed. In these jurisdictions the 1963 and 1993

1    amendments to Rule 28(b) may be helpful, in that they provide procedures that
     may be thought less offensive by the foreign country. It is well, however, to
2    realize that compliance with Rule 28(b), even as amended, will not insure
     completion of a deposition abroad. Examination of the law and policy of the
3    particular foreign country involved, and consultation with the Department of
     State, is advisable.

4
*See also*, Advisory Notes to Rule 28, which refer to the problems and issues relating to

5
application of a foreign sovereign's law:

6
                *         *         *         *         *

7    Some foreign countries are hostile to allowing a deposition to be taken in their
     country, especially by notice or commission, or to lending assistance in the
8    taking of a deposition. Thus compliance with the terms of amended
     subdivision (b) may not in all cases ensure completion of a deposition abroad.
9    Examination of the law and policy of the particular foreign country in advance
     of attempting a deposition is therefore advisable. See 4 *Moore's Federal*
10   *Practice* ¶¶28.05-28.08 (2d ed. 1950).

11   *Cf., Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court*, 482 U.S. 522, 559, 107

12   S.Ct. 2542, 2563 (1987) (Justice Blackmun, concurring in part and dissenting in part):

13   The United States recently recognized the importance of these sovereignty
     principles by taking the broad position that the [Hague] Convention 'must be
14   interpreted to preclude an evidence taking proceeding in the territory of a
     foreign state party if the Convention does not authorize it and the host country
15   does not otherwise permit it.' Brief for United States as *Amicus Curiae* in
     *Volkswagenwerk Aktiengesellschaft v. Falzon*, O.T. 1983, No. 82-1888, p. 6.
16   Now, however, it appears to take a narrower view of what constitutes an
     'evidence taking procedure,' merely stating that 'oral depositions on foreign
17   soil ... are improper without the consent of the foreign nation.' Tr. of Oral Arg.
     23. I am at a loss to understand why gathering documents or information in a
18   foreign country, even if for ultimate production in the United States, is any less
     an imposition on sovereignty than the taking of a deposition when gathering
19   documents also is regarded as a judicial function in a civil-law nation.

20   Mongolia is not a signator to the Hague Convention on Taking Evidence, which further

21   complicates the matter.[2]/ Under Hague, and dependent upon the individual country involved

22   and which portions of the Hague Convention assented to by that particular country,

23   deposition may – or may not – be permitted and, even where depositions may be permitted,

24   the conditions imposed by the foreign sovereign can be significant.

25

26   _____

27   [2]/    See, < http://www.hcch.net/index_en.php?act=conventions.status&cid=82#nonmem >, which lists
     those countries that are signators to the Hague Convention. Mongolia is not one of them.

28

1    As an example, we attach hereto as Appendix "A" an excerpt from the U.S. State

2  Department website providing information regarding the taking of evidence in the People's

3  Republic of China.[3]/  We do so for the reason that there does not appear to be any readily

4  available source of information on the legality of taking depositions in Mongolia *vel non*,

5  including telephone depositions.  The example of the PRC demonstrates the extremely

6  serious repercussions of taking a deposition in violation of a foreign sovereign's laws.  In the

7  case of China, for example, the taking of such depositions is not only problematic and/or

8  illegal, but potentially can subject the participants attending in the foreign country – such as

9  the deponent, a court reporter, a notary, *etc.*, ***to no less than criminal sanction***.  Perhaps such

10  problems do not matter to plaintiff or his counsel, but they do matter to the United States and

11  its attorneys – and certainly to the witness who stands exposed.

12    Attached hereto as Appendix "B" is an excerpt from the State Department website

13  concerning Denmark.[4]/  We provide this excerpt to demonstrate that even in a Western

14  European country with a legal system that likely is more akin to the United States' than

15  Mongolia, telephone depositions are explicitly ***prohibited***.  (We note, as merely another

16  example, that Belgium allows depositions in limited circumstances, but precludes them if an

17  agent or employee of a government – such as Government counsel here – is at all involved

18  in questioning or interviewing.)

19    Plaintiff therefore seeks (a) to involve the Court in a matter of international relations

20  by putting its *imprimatur* (a court order) on a procedure that (b) potentially could put a U.S.

21  citizen at legal risk, as well as cause embarrassment between the two countries and their

22  sovereign relationship due to involvement of both the judicial and executive branches of the

23  United States.  (*See also*, Appendix "A", which includes reference to a previous N.D. of

───────────────────

25  [3]/    Appendix "A" is excerpted from the State Department website on taking evidence in China.  The full
26  section is set out at < http://travel.state.gov/law/info/judicial/judicial_694.html >.

27  [4]/    Appendix "B" is excerpted from the State Department website on taking evidence in Denmark.  The
28  full section is set out at < http://travel.state.gov/law/info/judicial/judicial_698.html >.

1 California case dealing with foreign depositions.)

2 What the foregoing appendices demonstrate is that the potential of violating a foreign

3 nation's sovereign law in the taking of a deposition, including a telephone deposition, can

4 have serious repercussions not merely for the countries and the institutions involved (*e.g.*,

5 both the Court and the Executive Branch, the latter through its counsel in the Department of

6 Justice), but also for anyone participating in the deposition itself within the foreign

7 sovereign's borders. It is precisely for that reason that all Government counsel must seek the

8 express approval of the State Department before participating in foreign depositions. While

9 plaintiff's counsel is obviously beyond the reach of the Mongolian government, neither the

10 witness nor the notary blithely proffered by plaintiff's counsel enjoy the same comfort.

11 The burden of demonstrating the appropriateness of the foreign country deposition

12 rests with the party seeking the deposition, *i.e.*, plaintiff. Specifically, the burden is upon

13 plaintiff to demonstrate that the procedure is both *legal* under the foreign country's laws *and*

14 would not subject the participants (particularly the witness and any notary) to potential legal

15 jeopardy, criminal or otherwise.

16 Finally, we note that wholly aside from the legal and international issues involved

17 (and the ethical issues briefed above), the taking of telephone depositions, whether in

18 Mongolia or Maine, necessarily would preclude the ability of the United States to show and

19 use critical exhibits, such as photographs, diagrams, drawings, and other relevant materials

20 that would be used as exhibits.

21 ### CONCLUSION

22 For the foregoing reasons, the motion to take telephone depositions must be denied.

23 In addition, the United States requests that plaintiff be ordered to forthwith provide *complete,*

24 *unedited* copies of the tape recording we know about, as well as all other *ultra vires* contacts,

25 statements, recordings, *etc.*, of which we presently are unaware. This would include the tape

26 recorded statement of the witness in Mongolia that the government is aware that the plaintiff

27 counsel has in his possession. Once all materials have been provided regarding contacts with

28

1  the United States' employees, the United States then will be in a position to seek any

2  appropriate remedies, including any remedies pertaining to the witnesses, their ability to

3  testify as witnesses, the scope of testimony, and disqualification of counsel.

4  Dated: July 21, 2008.

          GREGORY G. KATSAS
          Acting Assistant Attorney General

5            JOSEPH P. RUSSONIELLO
          United States Attorney

6            R. MICHAEL UNDERHILL
          Attorney in Charge, West Coast Office

7            Torts Branch, Civil Division
          R. SCOTT BLAZE

8            Senior Admiralty Counsel
          Torts Branch, Civil Division

9

10            /s/ Chad Kauffman
          CHAD KAUFFMAN

11            Trial Attorney
          Torts Branch, Civil Division
          U.S. Department of Justice

12

13            Attorneys for Defendant
          United States of America

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the forgoing OBJECTION AND RESPONSE OF THE UNITED STATES TO PLAINTIFF'S "ADMINISTRATIVE MOTION" was served on the following at their last known addresses:

Served Electronically through CM/ECF:

Arnold Berschler          arnold@berschler.com                    July 21, 2008

VERONICA GARNER

Excerpted from: http://travel.state.gov/law/info/judicial/judicial_694.html

      *            *            *            *            *            *

SUMMARY: Judicial assistance between the United States and China is governed by the Vienna Convention on Consular Relations, 21 U.S.T. 77, TIAS 6820, 596 U.N.T.S. 261, to which the United States and the People's Republic of China are parties, and the U.S. - China Consular Convention, 33 U.S.T. 3048, TIAS 10209 and the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters. (See also 22 U.S.C. 4215, 4221.) The Government of the People''s Republic of China has advised the United States of the procedures it considers acceptable under Chinese law and practice concerning obtaining evidence in China. Taking evidence in China for use in foreign courts is problematic. **China does not recognize the right of persons to take depositions, and any effort to do so could result in the detention and/or arrest of U.S. citizen participants**. This flyer seeks to alert you to the problem so that you may advise appropriate parties. (Emphasis added.)

**VOLUNTARY DEPOSITIONS:** Upon its accession to the Hague Evidence Convention, China declared that the provisions of Chapter II of the Convention except for Article 15 will not be applicable. This means that diplomatic and consular officers may take the evidence without compulsion of nationals of the United States. However, Article 15 also contains a provision which states that a contracting state may declare that evidence may be taken by a diplomatic officer or consular agent only if permission to that effect is given upon application made by him or on his behalf to the appropriate authority designated by the declaring State. Traditionally, Chinese authorities do **not** recognize the authority or ability of foreign persons, such as American attorneys, to take voluntary depositions of willing witnesses, even before a U.S. consular officer, Article 27(1) of the U.S. - China Consular Convention of 1980 notwithstanding. In view of this position, the United States is seeking a clarification from the People''s Republic of China regarding its recognition of the right of U.S. consular officers to take voluntary depositions of U.S. citizens in China.

Given China''s declaration on accession to the Hague Evidence Convention that it does not consider itself bound by Articles 16-22 of Chapter II of the Convention, China could well deem taking depositions by American attorneys or other persons in China, as a violation of China''s judicial sovereignty. Such action could result in the arrest, detention, expulsion, or deportation of the American attorneys and other participants. *(See our Country Specific Information for China for information about arrests and criminal penalties in China.)* The right to administer oaths in China is strictly governed by local Chinese law and applicable treaty. A person authorized to administer oaths in the United States may not be recognized by Chinese authorities as empowered to perform that function in China. Even a Chinese "notary" or other person empowered to administer oaths may not be recognized by Chinese authorities as empowered to do so in connection with depositions, given China's strict position on that question. Conducting a deposition in a hotel with oaths to be administered

INITIAL EMERGENCY RESPONSE, APPENDIX "A", Page 1 of 4

by such a private person could have serious implications for the individual administering the oath, as well as other participants. In 1989, China permitted the taking of a limited deposition in the matter of *U.S. v. Leung Tak Lun, et al.;* **CR 88-0214-WHO** in an action before the U.S. District Court for the Northern District of California. China has advised the United States that the granting of authority for the taking of that deposition should not be regarded as a precedent. Efforts to obtain permission from the Chinese Ministry of Foreign Affairs to conduct depositions since that time have proven unsuccessful.

**CHINESE POSITION ON ISSUE OF OBTAINING EVIDENCE IN CHINA:** China has communicated its views on the subject of obtaining evidence in a series of diplomatic notes to the U.S. Embassy in Beijing. In diplomatic note No. 106 dated November 6, 1981, the Chinese Ministry of Foreign Affairs advised the U.S. Embassy that if a court of the United States requests the depositions of witnesses resident in the People"s Republic of China, it is necessary to submit a letter rogatory through the diplomatic channel. The Chinese Ministry of Foreign Affairs reiterated its government"s position on depositions of witnesses within China by foreign attorneys or consuls in Diplomatic Note No. 88 dated April 14, 1988. The note said that for a U.S. consular officer to receive or witness statements made under oath or affirmation in China in contravention of Chinese law would not conform to the provisions of the U.S. - China bilateral consular convention. Most recently, the Chinese government repeated this position in a Circular Diplomatic Note No. 77 dated September 11, 1996 to all Chiefs of Foreign Missions in Beijing. China deposited its instruments of accession to the Hague Evidence Convention December 8, 1997. The United States declared its acceptance of China"s accession to the Convention in June 1998. The Convention entered into force between the United States and the PRC in August 1998. The United States is seeking clarification from the Government of the People"s Republic of China concerning how the Hague Evidence Convention will be applied in China.

**TRANSMITTAL OF LETTERS OF REQUEST IN CIVIL AND COMMERCIAL MATTERS FOR COMPULSION OF EVIDENCE:** Requests for compulsion of evidence in civil and commercial matters may be forwarded directly to the Chinese Central Authority. Utilize the model letter of request annexed to the text of the Convention. See our general flyer on the operation of the *Hague Evidence Convention* .

**CHINESE CENTRAL AUTHORITY:**
Bureau of International Judicial Assistance
Ministry of Justice of the People"s Republic of China
10 Chaoyangmen Nandjie, Chaoyang District
Beijing 100020
China

**PREPARATION OF LETTERS ROGATORY FOR USE IN CHINA IN CRIMINAL AND ADMINISTRATIVE MATTERS:** In diplomatic note No. 106 dated November 6,

1981, the Chinese Ministry of Foreign Affairs advised the U.S. Embassy that a letter rogatory must bear the signature of the judge and seal of the court. Moreover, the letter rogatory should contain the following information: the name of the court making the request, the names of the parties, the subject matter of the litigation, the name and address of the witness, and written interrogatories and cross interrogatories. The letter rogatory and written questions must be accompanied by a Chinese translation. No further authentication is required. For more information, consult our general flyer *Preparation of Letters Rogatory*.

**USING LETTERS ROGATORY TO REQUEST DEPOSITIONS IN CHINA IN CRIMINAL AND ADMINISTRATIVE MATTERS:** In April 1991, the United States requested, without success, that Chinese and U.S. citizens be deposed in China in connection with two criminal cases. In those cases, Chinese judicial authorities did not reply to the letters rogatory from U.S. courts requesting permission to depose the witnesses. Since that time, there has been no success in obtaining permission from Chinese authorities to take depositions pursuant to a letter rogatory or letter of request. In view of the Chinese position on this question, at the present time, it does **not** appear possible to take the deposition of a witness located in China. Nevertheless, should you wish to pursue such a request, this office would, of course, be prepared to transmit a letter rogatory through appropriate diplomatic channels as explained in the Preparation of Letters Rogatory information flyer. As noted above, we have no indication that China would respond favorably to a letter rogatory requesting participation by American or Chinese counsel in the depositions of witnesses in China, or, as an alternative, that a request for depositions on written questions to be conducted by appropriate Chinese authorities would be granted.

**POSSIBLE OPTIONS AVAILABLE:** If the witness is willing to be deposed, one option might be to persuade the witness to travel to another country or jurisdiction where it is possible to conduct voluntary depositions. Consult our country-specific judicial assistance information flyers for details about procedures in other countries.

**COMPULSION OF TESTIMONY OR DOCUMENTARY EVIDENCE:** While it is possible to request compulsion of evidence in China pursuant to a letter rogatory or letter of request (Hague Evidence Convention), such requests have not been particularly successful in the past. Requests may take more than a year to execute. It is not unusual for no reply to be received or after considerable time has elapsed, for Chinese authorities to request clarification from the American court with no indication that the request will

eventually be executed. It may be useful to consult local counsel in China for further guidance. But see discussion below regarding the role of lawyers in the Chinese judicial system. See note above regarding preparation of letters rogatory for use in China. Upon its accession to the Hague Evidence Convention, China declared that "in accordance with Article 23 of the Convention concerning the Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in common law countries, only the request for obtaining discovery of the documents clearly enumerated in the Letters of Request and of direct and close connection with the subject matter of the litigation will be executed." The United States is seeking clarification from the Government of the People"s Republic of China regarding its implementation of the Hague Evidence Convention.

INITIAL EMERGENCY RESPONSE, APPENDIX "A",  Page 4 of 4

Excerpted from: http://travel.state.gov/law/info/judicial/judicial_698.html

    \*       \*       \*       \*       \*       \*

**DEPOSITIONS OF WILLING WITNESSES:** Depositions of willing witnesses abroad may be taken on notice or pursuant to a commission before any consul or vice consul of the United States (22 USC 4215; 4221; 18 USC, Appendix, Rules of Criminal Procedure, Rules 15 and 17; 28 U.S.C., Appendix, Rules of Civil Procedure, Rules 28-31.) Pursuant to Articles 15 and 16 Denmark has made a statement that depositions may not be taken by diplomatic or consular officers without prior permission from the Danish Ministry of Justice. The Ministry is extremely reluctant granting such permission. This is irrespective of the nationality of the witness. According to the Danish Ministry of Justice, it is a prompt, easy and inexpensive process to take evidence at Danish courts, and therefore the Ministry is of the opinion that generally there is no reason to use a method which, pursuant to the Danish conception of law, appears less satisfactory. Voluntary witnesses deposed outside Danish courtrooms cannot be prosecuted under Danish law for perjury. **Telephone depositions are not permitted. Upon ratification Denmark declared that, pursuant to Article 17, the taking of evidence by commissioners is not permissible in Denmark.** (Emphasis added.)

———————————————

INITIAL EMERGENCY RESPONSE, APPENDIX "B", Page 1 of 1