BERSCHLER ASSOCIATES, PC
Arnold I. Berschler, SBN# 56557
22 Battery Street, Suite 810
San Francisco, CA 94111
Telephone (415) 398 1414


Attorneys for PLAINTIFF:
JACKIE V. LOTT

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE V. LOTT, ) | Civil No. C-07-3530-PJH |
| ) | |
| Plaintiff, ) | |
| ) | **LOTT'S REPLY ON MOTION FOR** |
| vs. ) | **ORDER PERMITTING TELEPHONIC** |
| ) | **DEPOSITIONS** |
| UNITED STATES OF AMERICA, ) | |
| ) | DATE:    July 23 |
| Defendant ) | TIME:    10:30 a.m. |
| ) | |
| _____ ) | |

  The United States of America opposes upon three grounds: (1) Alleged interference with purported attorney-client relationships. (2) FRCP 28 considerations. (3) Mechanical presentation of proposed exhibits. Plaintiff Jackie V. Lott respectfully replies.

  Plaintiff respectfully requests this Honorable Court take judicial notice of the *Order re Administrative Motion* in this action (Document 51, filed July 21, 2008). FRE 201(d) [mandatory]. This Order extends the times for discovery. Nevertheless, not a lot of time remains to complete discovery. Plaintiff is still in need of the Court's timely relief.

**THERE WAS NO INTERFERENCE WITH ATTORNEY-CLIENT RELATIONSHIPS**

  **United States' Misconstrues Case Law and**
  **Fails to Establish  Attorney-Client Relationships**

  United States position is that if any employee or ex-employee is contacted by opposing

counsel, such conduct, without further circumstances, is a violation of the rules of ethics. That is not the law, as shall be shown below. Plaintiff did not violate rules of ethics, as will be shown below.

In its *Opposition and Response of the United States to Plaintiff's "Administrative Motion'* ("*Opp*." hereinafter) United States misconstrues the law cited to support its point, conflating attorney-client communications with the concept of employee's status. *E.g.,* the relevant issue of *In re Roe*, Inc., 168 F.3d 69 (2nd. Cir., 1999) was whether corporate officers would be required to produce a communication created by a former corporate counsel when advising said corporation. In *Admiral Ins. Co. v. U.S. Dist. Court for Dist. Of Arizona*, 881 F.2d 1486 (9th Cir., 1989), is another "communication" case. The issue was whether the corporation retained control over statements by corporate officers made to its outside attorneys who were preparing for litigation, where the officers knew that the attorneys represented only the corporation and knew that the corporation would be asserting the privilege.

Neither Mr. Scease nor Mr. Elliott gave any statements to United States' attorneys that plaintiff's attorney tried to invade. Moreover, neither of these men constitute a "Client -Agent." Indeed, the United States failed to support its burden of proof that either of these men constituted a "client" at all.

**Neither Scease's Nor Elliott's Status Rises to Corporate Client Level**

*Martin v. Miller*, 65 F.3d 434 (5th Cir., 1995) was a libel for wage penalty damages against the master of a MARAD vessel, crewed by a private company pursuant contract. (Similar to the MARAD - CAPE JACOB operation.) *Martin* held, inter alia, that the plaintiff was an employee of the United States for purposes of the *Clarification Act*, 50 U.S.C. App. 1291. It does not establish that every and any employee of a corporate entity (or government) has the status to speak for the corporation and bind it; thereby being the sort of employee over whom the corporation might exercise control of conduct with and communications to outsiders.

Plaintiff respectfully argues that status of the employees is the key to untying defendant's knotty position. Case law arising under FRCP 30(b)(1) and FRCP 30(b)(6) provides good analysis.

1   Rule 30(b)(1) requires a corporation to produce for deposition those specifically named
2   deponents who are officers, directors or managing agents of the corporation. See, *JSC Foreign*
3   *Economic Ass'n v. International Development and Trade Services, Inc.*, 220 F.R.D. 235, 237. Rule
4   30(b)(6) does not preclude noticing a deposition of a corporation through a specially named
5   individual. See, Wright Miller and Marcus, 8A, *Federal Practice and Procedure* (West Pub. Co.
6   1994), Depositions, §2103, at p36.

7   A frequent issue under these rules is whether the corporate entity is required to produce an
8   individual named in a noticed deposition who has not been subpoenaed. Almost invariably, the
9   issue turns on the phrase". . .officers, director or managing agents. . ." In short, not every employee
10  of a corporation has the status to require the corporation to produce him/her.  It then follows that
11  in order for plaintiff attorney to have inserted himself into the attorney-client relationship between
12  defendant and the Department of Justice, United States would have to show that Mr. Scease and
13  Mr. Elliott were officers, directors and/or managing agents of United States (or Matson Navigation
14  Co., Inc., the operator). Criteria for "Managing Agents" are: (1) having general powers over
15  corporate decisions, (2) can be relied upon to give testimony at employer's request, (3) whether the
16  sought for deponent reports to superiors concerning the subject matter. (4) general responsibilities
17  of the person respecting the matters in litigation. (5) Can the would-be deponent be expected to
18  identify with the interests of the corporation. *JSC Foreign  Economic Ass'n v. International*
19  *Development and Trade Services, Inc.*, supra, at 237. In all events, these men do not meet the
20  criteria.

21  United States makes no showing as to what status these men had. This basis of defendant's
22  objection must be discarded for failure of proof.

23  Furthermore, United States cannot argue that Messrs. Scease and Elliott were corporate
24  officers or directors. They only were complement of the vessel. Finally, prior to the 1970
25  amendments to FRCP 26 and FRCP 30 (essentially swapping the function of the rules) and the
26  merging of Admiralty Courts into the federal courts, plaintiff counsel tried to obtain the depositions

27
28  LOTT'S REPLY ON MOTION FOR ORDER PERMITTING TELEPHONIC DEPOSITIONS
    [\lott v us\motion\tel depo reply.m04]            3

of sailors. That was difficult because they moved around and rarely could be subpoenaed. So, resort was had to noticing employing corporations by and through the named sailors. Early on, the courts declared that only the Captain clearly was a managing agent, some courts also opining the Chief Mate to be a managing agent. *Shenker v. United States*, 25 F.R.D. 96, 99 (E.D.N.Y. 1960).

**United States Did Not Assert or Warn of Any Protected Relationship**

Pursuant to motion practice and stipulation - so that plaintiff could contact potential witnesses - United States produced a crew list that contained no identification of the job titles or capacities if the persons listed. See, attached EXHIBIT 1. Was a particular person a wiper (janitor), a junior engineer, the Chief Mate, the Captain, etc.? The list did not say. Nor was Mr. Lott generally available to help clarify. Was a particular person a "protected witness"? There was no way to know. The list did not assert any privilege or protection, neither did any other writing by the United States. Indeed, United States trumpets the "audacity" of plaintiff's attorney for contacting Mark Scease - as if such, and the tape of his statement, were newly revealed. See, *Opp.*, at 2:23-3:2 and 5:13-20. Reality is that Mr. Scease's audio-tape was played for defense counsel Chad Kauffman on June 5, 2008 in court ordered mediation, after mediator Stephen R. Goldstein confirmed that such would be protected as a communication in settlement negotiations. Further, as early as May 2008, plaintiff advised defendant of the desire to depose Mr. Scease. The *Stipulation for Order Modifying Discovery Deadlines with Order* (Document No. 38, filed May 30, 2008) stated:

> The vessel is located off shore. Some of the witnesses are located in Korea. Others former vessel complement, are located wherever their present employment may take them. For instance, an alleged eye witness, Mark Scease, is believed by plaintiff's attorney to be in Mongolia and is believed to have been for some time.

Judicial notice is requested. Further, in the course of trying to obtain defendant's stipulation to a telephonic deposition, plaintiff's attorney had repeatedly told Mr. Kauffman about communication to Mr. Scease. See, attached EXHIBIT 2, plaintiff counsel's email to Mr. Kauffman. Yet at no time prior to the filing of its opposition in this motion had United States ever remotely suggested that

Mr. Scease was a "client" or a "protected witness." This strongly indicates that United States is complaining about Mr. Scease just to place another obstacle in plaintiff's discovery path.

United States deliberately was unclear about the status of persons whose contact information was given to plaintiff - for the purpose of plaintiff's contacting them to develop his case - and now United States complains because plaintiff's attorney fell into what United States would like to use as a trap. In the criminal law, entrapment is a defense. In the civil law, the concept is estoppel.

**Witnesses Were no Longer Employed by Defendant's Agent**

Defendant cites no law that prohibits counsel for plaintiff from contacting former, non-managing agent/officer employees.

**TELEPHONIC DEPOSITION IN MONGOLIA - SHOULD BE OKAY**

Defense counsel voiced no concerns about Mr. Scease's safety or about sanctions against counsel for deposing in Mongolia during the rules conferencing prior to this motion. So, plaintiff is tackling this issue upon a few hours formal notice. Plaintiff does not want to promote unlawful conduct, either.

Defendant pointed out that there is no treaty or rule to guide us as to Mongolia. *Opp.*, 8:3-5. Plaintiff attorney has caused the issue to be investigated by checking with a knowledgeable person. The Honorable Gombosuren Ganzorig served for eight years as a justice at the Supreme Court of Mongolia. He has emigrated to the United States and now conducts business in Virginia. That business is the providing of various consulting services upon requests of individual citizens, business and government organizations. A brief inquiry to the Honorable Mr. Ganzorig indicates that the country of Mongolia has no objections to, nor restrictions on procedures and protocols for the taking of telephonic depositions of citizens of the United States who are in Mongolia, by attorneys, including those employed by the Department of Justice, who would be in the United States concerning civil cases in the courts of the United States. Further, there would be no threat of penalties, sanctions and/or punishment to or of the deponent, the notary (or other oath provider)

1  or the attorneys. A website for the company with which the Honorable Mr. Ganzorig is associated
2  in Virginia is http://www.ganzorigconsulting.us/aboutus.html. This is the page describing him and
3  his work. Judicial Notice is requested. FRE 201; et seq.
4      Plaintiff respectfully requests that he be allowed to obtain the affidavit of the Honorable Mr.
5  Ganzorig and to submit such to this Honorable Court for it's consideration on the issue of Mr.
6  Scease's deposition. Further, that the Court's hold its decision in abeyance on that issue until the
7  affidavit is submitted.
8      If what The Honorable Gombosuren Ganzorig informally says turns out to be the case,
9  FRCP 28 would certainly permit the procedure under the protocol plaintiff suggests.

## "MECHANICAL" ISSUES

11  United States complains it cannot submit exhibits to the deponents. *Opp*., 9:16-20.
12      Plaintiff counsel has participated in scores of these sorts of depositions and been able to use
13  exhibits without being present. The procedure is for the attorneys to submit the proposed exhibits
14  to the deponent, and to each other, pre-marked. Then the deponent or the notary (or equivalent
15  person, so commissioned) returns the exhibits to the California-based reporter, if deponent has
16  marked upon the exhibits.

## CONCLUSION

18  United States position is that if any employee or ex-employee is contacted by opposing
19  counsel, such conduct, without further circumstances, is a violation of the rules of ethics. That is
20  not the law.
21      Plaintiff did not violate rules of ethics.
22  United States has the burden and failed to establish that either Mr. Scease or Mr. Elliott
23  have status to render them extensions of the corporate entity who are able to bind it through their
24  testimony. In short, the equivalent of a client. The objection on that basis must fail.
25      Further, case law truly applicable to the issue of whether plaintiff counsel communicated
26  directly to an opposing client shows that neither man rises to the necessary status as a matter of law.

28  LOTT'S REPLY ON MOTION FOR ORDER PERMITTING TELEPHONIC DEPOSITIONS
   [\lott v us\motion\tel depo reply.m04]        6

1    United States is to be estopped because it caused confusion by deliberately concealing the
2 status (job title, protected status) of persons whose contact information it gave to plaintiff in
3 discovery, knowing plaintiff would use such to directly contact persons to determine potential
4 witnesses and get their statements.
5    United States belated protest of contacting Mr. Scease is suspicious. United States had about
6 two months to complain but never did before its formal opposition to the motion.
7    The tape of Mr. Scease is work product. It remains so even though it was played for Mr.
8 Kauffman at mediation because it was a communication to Mr. Kauffman in an effort to negotiate
9 a settlement.
10    In all probability, there is no exposure of running afoul of the authorities in Mongolia;
11 although, plaintiff is attempting to obtain the affidavit of a retired member of the Supreme Court
12 of Mongolia to that effect. This should suffice, given that there is no written guidance and when
13 contacted on July 21, 2008, the Mongolian Embassy directed the question to The Honorable
14 Gombosuren Ganzorig.
15    Plaintiff respectfully submits that the appropriate orders in this instance are: (a) To permit
16 the Elliott deposition to go forward as soon as possible, obviating the local rule concerning ten days
17 notice because Mr. Elliott is shipping out. (b) To reserve ruling until an affidavit can be procured
18 concerning the FRCP 28 issue.

RESPECTFULLY SUBMITTED,

BERSCHLER ASSOCIATES, PC.

*/s/ Arnold I. Berschler*

DATED: July 21, 2008

Arnold I. Berschler
attorney for plaintiff, JACKIE V. LOTT